### ALDRICH ET AL v. BURNHAM ET AL.

(No. 1138, September 2nd, 1924; 228 Pac. 578.)

CONTRACTS—REFORMATION OF INSTRUMENT—BURDEN OF PROOF—EVIDENCE.

1. A contract for sale of stock in water company, providing for credit upon purchase price for moneys and securities received or contracts entered into in a specified sum, *held* not to mean that purchaser should have credit for aggregate face value of all contracts, but that sales so made should be credited only in a sum specified in the contract.

2. In an action to compel trustee to turn over securities claimed under a contract for sale of stock in a company owning water rights, burden of proof to have contract reformed to meet their contention was on purchasers.

3. In an action by sellers to compel trustee to turn over securities, which purchasers of stock in a company owning water rights deposited with trustees, pending determination of dispute as to amount due, finding that purchasers had not sustained burden of proof of having contract reformed to meet their contention sustained.

4. Under a contract for sale of stock in a company owning water rights, which provided for credit in named sum on account of contracts for sale of water rights, purchasers were not entitled to further credit by reason of individual water users' payment on contract, where amount due on such contract was taken into consideration in determining the agreed credit.

NOTE—See Headnotes (1) 40 Cyc. p. 826 (1926 Anno); (2) 34 Cyc. p. 980; (3) 34 Cyc. p. 986; (4) 40 Cyc. p. 826 (1926 Anno).

APPEAL from District Court, Park County; JAMES H. BURGESS, Judge.

Action by S. W. Aldrich and others against S. H. Burnham, Jr., and others doing business as Burnham and Deane. From an adverse judgment, certain defendants appeal.

*Brome & Hyde, H. F. Rose* and *R. N. Matson* for appellants.

Appellants were entitled to an additional credit of $9,600 on the Peterson contract, and were entitled to judgment against appellees for $26,615.23 instead of $4,423.06 the amount allowed; the contracts in evidence support this contention; the amount actually received by appellees greatly exceeded $91,440.70; the evidence of witness, Raymond shows that the Peterson contract had not been consumated on October 11, 1919; the difference between $123,182.87 and $91,440.70 which plaintiffs had received was represented by five (5) contracts of sale, one to Hathaway, three to Martin and one to Plumb, aggregating $31,301.00 the amount of additional credit claimed by defendants. This was the apparent intention of the parties and the agreement should be so construed, Studebaker Bros. v. Mau, 13 Wyo. 358; the contract of October 11, 1919 should be reformed to express the intent of the parties; the Gerharz audit, supports appellants contention; the trial court found that it was the intention of the parties to include the Hathaway-Martin-Plumb contracts in credit allowed in the contract of October 11, 1919, and that pursuant to the agreement of May 18, 1920 the securities in the hands of Sullivan should be delivered to plaintiffs. Of this finding we do not complain, but we do contend that defendant was entitled to credit for all payments previously made which aggregated the sum of $123,182.87.

*William E. Mullen* and *W. L. Simpson* for respondents.

The motion to dismiss is based on the fact that the individual defendants did not give notice of appeal; that no appeal bond was filed; Hahn v. Bank, 25 Wyo. 467; Culbertson v. Ainsworth, 26 Wyo. 214; Canal Co. v. Akin, 27 Wyo. 88; the Peterson contract was credited as a part of

the $91,440.70 stipulated in the agreement of October 11, 1919; it should not be credited a second time; the testimony of Raymond shows this credit; all facts with reference to the Peterson contract and the Gerharz audit were fully understood upon the making of the second contract on May 18, 1920, made to settle all difficulties of interpretation that had arose with reference to the meaning of the original contract of October 11, 1919; the only point left undetermined and to be settled by arbitration by the agreement of May 18, 1920, was as to whether the Hathaway-Martin-Plumb contracts, had been included in the original credit of $91,-440.70; this point was decided in favor of appellees by the trial court, and appellants in their brief say they do not complain of that finding; however, they shift their position and set up an entirely different claim for $9,600.00; the trial court found against them on this and the finding being sustained by evidence will not be disturbed on appeal; Kester v. Wagner, 22 Wyo. 512, Evans v. Cement Co., 21 Wyo. 184; Saratoga v. Jensen, 20 Wyo. 323; Irri. Co. v. LaPorte, 26 Wyo. 250; defendants offered no evidence for a reformation of the contract of October 11, 1919; and they did not ask for a reformation of the contract made thereafter on May 18, 1920, wherein it was mutually agreed that all points and questions arising on the former contract were settled and the amount due plaintiff from defendants was fixed and declared to be a balance of $60,139.30; no contention of ambiguity is made against the contract of May 18th, 1920; the judgment of the trial court should be affirmed.

BLUME, Justice.

This action was brought by S. W. Aldrich and others, as plaintiffs, hereinafter referred to as respondents, against S. H. Burnham, Jr., and J. R. Deane, as individuals and copartners, and against Adam Hogg and E. J. Sullivan, as trustees. The interest of Adam Hogg is the same as that of plaintiffs and he will herein be considered as such. E. J. Sullivan does not appeal, and the remaining defendants

only are appellants. The facts, so far as necessary for this opinion, are as follows:

On· and prior to October 11, 1919, the respondents were the owners of all of the capital stock of the Lakeview Canal Company, which owned certain water rights and was interested in certain lands in ·Park County, reclaimed under the Carey act. Contracts for the disposal of some of these water rights and lands had previously been made by said company, some of these contracts already paid in full, others only in part. On said date respondents entered into a contract with appellants, whereby the former agreed to sell to the latter all of said stock of said company for the purchase price of $165,000; but the sum of $91,440.70 was to be credited thereon by reason of cash received and contracts for water rights and·interests in lands already disposed of by said company. The sum of $2500 was paid in cash, and the balance of said purchase price was payable in installments of $30,000, $20,529.65 and $20,529.65 respectively. These various items make up the total purchase price of $165,000.00. An audit of the books of said company was made about December 31, 1919, which disclosed that the total sales of water rights and lands made up to that time amounted, at par, to the sum of $123,182.87. The Peterson, Hathaway, Martin and Plumb contracts, hereinafter referred to, were included in that audit, and the evidence shows that the contracts were made on or prior to October 11, 1919, during the time that respondents owned the stock of said company.

Some time prior to May 18, 1920, a dispute arose between the parties as to the interpretation of said contract of October 11, 1919. An action was brought by appellants against respondents in Nebraska, and another action was brought by' respondents against appellants in the district court of Park County, Wyoming. Negotiations between the parties were entered into which culminated in a contract between them on May 18, 1920, which states in part as follows:

"1. WHEREAS differences of interpretations of the contract made and entered into heretofore, to-wit, on the 11th day of October, 1919, between the parties of the first and second part hereto have arisen, and

WHEREAS a difference has arisen between the parties as to the obligations of the parties to said contract to each other, and over which a suit is now pending in the District Court of Lancaster County, Nebraska, and also a suit in the District Court of Park County, Wyoming, this further, additional, and supplemental agreement is made for the purpose of settling all matters in dispute between the parties and of releasing all claims of every kind and nature of either of said parties of the first and second part against the other arising by virtue of said contract of October 11th, 1919.

2. The parties of the first and second part hereto mutually agree that the remaining sum to be paid by the parties of the second part to the parties of the first part in full consideration of the sale and delivery by the parties of the first part to the parties of the second part of all the issued and outstanding stock of the Lake View Canal Company, together with all the unissued stock of the Fertile Valley Canal Company, is computed and declared to be at this time the sum of Sixty Thousand One Hundred Eighty-nine & 30/100 Dollars ($60,189.30), and that it shall be paid by the parties of the second part to the parties of the first part in the following manner and sums, to-wit:"

$28,888.30 of the sum last mentioned was provided to be paid in cash, or lands or contracts, leaving a balance of $31,301.00. This balance, it was agreed, was the amount of certain contracts for the sale of water rights and interest in lands made by the Lake View Canal Company to one Hathaway, one Martin and one Plumb, and inasmuch as "it is at this time uncertain as to whether said sale contracts were included in the $91,440.70 worth of contracts" for which the appellants were given credit by the respond-

ents in the contract of October 11, 1919, therefore, it was
agreed that securities of the same amount as the contracts
with Hathaway, Martin and Plumb should be turned over
to E. J. Sullivan as trustee to be held by him until it could
be determined whether respondents or appellants were the
owners thereof. It was agreed that the settlement of this
question should be left to two arbitrators. These arbitrators
never acted and could not agree, and it is conceded by all
parties that it is necessary to determine the question in
court. Par. 11 of the contract of May 18, 1920, further
states:

"11. That each of the parties hereto release and re-
nounce to the other any claim or liability for damages or
otherwise connected with the execution of the contract of
October 11th, 1919."

The action herein was brought for the purpose of com-
pelling said E. J. Sullivan, trustee, to turn over to plain-
tiffs the securities in his hands and to have the same de-
clared the property of plaintiffs. Appellants filed an ans-
wer, claiming to be the owners of said securities. They also
filed a counterclaim for ditch work. The trial court gave
judgment for respondents, declaring them to be the owners
of said securities holding that the Hathaway, Martin and
Plumb contracts, were included in the credit of $91,440.70,
and also gave judgment to appellants for $4,426.06 as a bal-
ance due from respondents for ditch work done for the
benefit of the latter. Appellants do not complain of this
action of the court, but do complain that certain other re-
lief, hereafter discussed in detail, was not granted them.

1. The audit made about December 31, 1919, showed
that the sales of water rights and lands made by the Lake
View Canal Company up to the time that the contract of
October 11, 1919 was executed aggregates the sum of $123,-
182.87. That contract provided: "Nothing in this agree-
ment shall be construed to include the land and water
owned by Mr. Altberger and Mrs. Eoa C. Brown." The

land and water right of these two parties had been sold to them by the Lake View Canal Company, aggregating the par value of $9500.00. Deducting this amount from $123,-182.87 leaves $113,632.87. Appellants contend that they should be credited with this amount of money on the purchase price of $165,000 above mentioned, instead of $91,-440.70, making a difference of $22,192.17, for which—the balance of the purchase price being paid—they should have had judgment in addition to the $4,426.06 allowed them on their counter claim for ditch work. The contract of October 11, 1919 provided, among other things, for a credit upon said purchase price by reason of cash and contracts as follows:

"All of the moneys and securities received or contracts entered into by the Lake View Canal Company are the property of the parties of the first part (respondents) and are to be accepted by them in lieu of cash in the amount of $91,440.70, which amount is to be deducted from the purchase price of the said stock in the sum of $165,000.00."

Appellants contend that the intention of the parties was, and the clause above quoted means, that respondents should accept as part payment on the purchase price of $165,000 all of the contracts made by the Lake View Canal Company at their face value, amounting, as stated, to the sum of $123,182.87, less the amount of the Brown and Altberger contracts. They, in their answer, pleaded, in substance, that in the negotiations leading up to the contract of October 11, 1919, the respondents had represented to the appellants that the contracts for the sale of lands and water rights aggregated the face value of $91,440.70, and no more, upon which representation the appellants relied; that it had been orally agreed between the parties that all of the moneys and securities received by reason of said contracts should be retained by respondent and credited at their face value upon the purchase price of said stock; that notwithstanding such understanding, respondents on the same day

on which the contract of October 11, 1919 was executed, fraudulently sold other lands and water rights to one Hathaway, one Martin and one Plumb, aggregating the face value of $31,301.00, which said land and water contracts respondents fraudulently withhold from appellants.    Appellants prayed that, if necessary, said contract of October 11th, 1919, be reformed, so as to express the oral understanding aforesaid; that said sum of $31,301.00 be credited on their purchase price of $165,000.00 and that the securities aforesaid, now in the hands of E. J. Sullivan, trustee, pursuant to the contract of May 18, 1920, be turned over to them.

Notwithstanding some general allegations in the answer of appellants claiming credit for all sales of water rights and lands made by the Lake View Canal Company, the theory of the appellants in the court below was that they had not been properly credited with the Hathaway, Martin and Plumb contracts, aggregating $31,301.00, and that these contracts were not considered in the contract of October 11, 1919, in fixing the credit of $91,440.70.    The court found against them on that issue and appellants do not complain of that finding.    They have now shifted their ground, discard the theory that they should be credited with said sum of $31,301, by reason of these contracts, but now, in effect, contend that they should have credit by reason of other and different contracts because the total of sales of lands and water rights aggregate $123,182.87, and they ask a credit of $22,192.17, which is an entirely different credit from that asked for in the answer.    It is not, however, necessary to decide that the appellants cannot now be heard to thus shift their theory.    The provision of the contract above quoted means, we think, not that the appellant shall have credit for the aggregate face value of all contracts for land and water rights sold by the Lake View Canal Company, but that the sales so made shall be credited only in the sum of $91,440.70.    Without deciding whether, in order to have a reformation of the contract of October 11, 1919,

it was necessary for appellants to at least also ask for the reformation of the contract of May 18, 1920, which was in settlement of the former contract, the burden of proof to have the former contract reformed was on the appellant.

The lower court, in effect, found that they had not sustained their burden, and we are not able to say that this finding is without support of substantial testimony. The record shows, as stated, that an audit of the books of the Lake View Canal Company was made on December 31, 1919. It is claimed that this audit was useless, except upon the theory that the appellant was to receive credit for the face of the land and water contracts. We do not, however, think that this is the necessary effect. Appellants obtained the right, through the acquisition of the stock of the Lake View Canal Company, to dispose of the remaining lands and water rights of said company. They were interested in knowing definitely what these remaining lands and water rights were and to have the statements made by respondents corroborated by the books of the company, without, necessarily at least, desiring to determine whether the amount of $91,440.70 mentioned in the contract was the amount to be credited to them on the purchase price above mentioned. In fact it would seem that appellants would have had the audit made prior to October 11, 1919, had the sum mentioned not have been intended as a definitely fixed amount. It is further argued, to sustain the appellants' present theory, that the provision in the contract of October 11, 1919 that "nothing in this agreement shall be construed to include the land and water owned by Mr. Altberger and Mrs. Eoa C. Brown," clearly shows that all other contracts not so excepted were intended to be part of the credit to be given to appellant on the purchase price. The inclusion of this provision lends color to appellants' claim, but is not, we think conclusive. Without attempting to say what particular purpose the provision was intended to subserve, an audit, as stated, was made about December 31, 1919, the books of the Lake View Canal Company were de-

livered to appellants soon after October 11, 1919, and the latter must have had full knowledge of all the land and water contracts outstanding long before May 18, 1920. Yet in the contract, made on that date, no such claim as is now made was set up and all claims of the respective parties were therein settled, except that the determination of the status of the Plumb, Martin and Hathaway contracts was expressly left for future determination.    For aught that the record shows the very claim now made was considered at the time of the making of this contract, when the amount still owing by appellant was fixed at a definite amount.    These facts, together with other evidence in the case, lends, we think substantial support to the finding of the trial court.

2.    On October 8, 1919, the Lake View Canal Company sold to one Peterson 160 acres of land and water rights for $9600, of which $1600 was paid.    The contract of October 11, 1919, contained a provision reading as follows:

"It is herein understood that the parties of the first part (respondents) have sold one certain tract of land of approximately one hundred and sixty acres (160) upon which the sum of sixteen hundred dollars ($1600) has been paid as initial payment.    In the event of such transaction being consummated by the original purchaser, then the party of the second part shall be credited with the said sale, in the same manner as other credits have been given; and in event of failure of the said deal being consummated, then the land shall inure to the benefit of the parties of the second part."

During the trial, the witness Raymond, former secretary and director of the Lake View Canal Company, testified that this clause of the contract of October 11, 1919 related to the Peterson land sale above mentioned.    The record shows that Peterson made one of the deferred payments due March 1, 1920, and it is claimed that since it is shown that the transaction with him was consummated, appellant

is entitled to a credit by reason thereof in the sum of $9600. Appellants were permitted to set up this claim by an amendment made at the close of the trial, but the court refused to give such credit and this is assigned as error. Assuming, without deciding, that the credit claimed should have been given to the appellant at some time, there is in the record no basis warranting us to reverse the action of the trial court. The witness Raymond—the only witness testifying on this point—while making the statement above referred to, also stated that the amount due on the Peterson contract was taken into consideration in determining the amount of $91,440.70, and was part of the total credit allowed appellants, and if that is true the intent and meaning of the provision above quoted seems to be fulfilled, since we can hardly believe that that provision means that appellant should be given credit for the amount more than once. The audit above referred to, made on December 31, 1919, included the Peterson land sale. There is not a scintilla of evidence in the record as to what items were or were not taken into consideration in arriving at the amount of $28,888.30 agreed to be due on May 18, 1920, aside from the amount involved in the Hathaway, Martin and Plumb contracts, except an item of $5720 due to the state of Wyoming, nor is there anything to show whether this matter was or was not discussed. If the additional credit was due, it was due before the making of the contract on May 18, 1920, and since that contract definitely states the liabilities of the respective parties to each other, and definitely fixes the amount which the appellants should still pay to respondents by reason of the contract of October 11, 1919, we must, in the absence at least of evidence to the contrary, assume that the statement in said contract of May 18, 1920 is correct, that all items arising out of said contract of October 11, 1919, were considered, determined and settled. No evidence to the contrary appears in the record.

We find no reversible error in the record and hence the motion to dismiss the appeal need not be considered. The judgment of the lower court should be affirmed and it is so ordered.

*Affirmed.*

POTTER, Ch. J., and KIMBALL, J., concur.